**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| S.R., an individual, | : | |
| | : | **Case No. 2:23-cv-1731** |
| Plaintiff, | : | |
| | : | **Chief Judge Algenon L. Marbley** |
| v. | : | |
| | : | **Magistrate Judge Elizabeth P. Deavers** |
| WYNDHAM HOTELS & RESORTS, | : | |
| INC., *et al.*, | : | |
| | : | |
| Defendants. | : | |

## OPINION & ORDER

This matter is before this Court on Defendants Six Continents Hotels, Inc.'s and Holiday Hospitality Franchising, LLC's (collectively, "IHG Defendants") Motion to Dismiss. (ECF No. 21). For the following reasons, Defendants' Motion is hereby **DENIED IN PART AND GRANTED IN PART.**

## I. BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff S.R. alleges she met her traffickers when she was thirty-eight and that for approximately five years, between 2008 and 2013, was trafficked for sex at several hotels in the Columbus Area, including the Crowne Plaza by IHG. (ECF No. 6 ¶¶ 48, 69-75). Plaintiff alleges Defendants "profited from each and every room that S.R.'s traffickers and customers rented." (*Id.* ¶ 95). She also alleges that "to save costs and continually reap millions of dollars in profits, Defendants generally failed to create, adopt, implement, and enforce company-wide policies and procedures regarding human trafficking (or suspected) at the branded properties." (*Id.* ¶ 43).

According to S.R., each stay at the IHG branded property raised "several consistent red flags," that should have been obvious to staff, "including, but not limited to: Paying for stays in cash; Paying for extended stays on a day-by-day basis; Requesting a room away from other guests; Obvious signs of illegal drug use; Frequent requests for linen changes; Unusually large numbers of used condoms left in the trash; Unusually large number of male visitors asking for S.R. or her traffickers at the front desk; Unusually large number of male visitors going in and out of S.R.'s room; Physical abuse in public spaces; Visible signs of prior/private physical abuse; Asking the front desk not to be disturbed; Living out of the hotel room; Loitering and soliciting on hotel grounds; and Loud noises of abuse or other violence audible to staff and/or other rooms." (*Id.* ¶ 66). Plaintiff alleges that staff witnessed her traffickers be violent with her on multiple occasions, but that her trafficker regularly paid off staff to ignore signs of her trafficking. (*Id.* ¶¶ 71-72). She also explains that her trafficker used the hotel's Wi-Fi to post advertisements for the sale of her body and communicate with "johns." (*Id.* ¶ 51).

Plaintiff now seeks to hold the IHG Defendants liable as beneficiaries of their participation in a commercial venture that they knew, or should have known, violated the TVPRA. Plaintiff commenced this action in May 2023, (ECF No. 1), and filed an Amended Complaint in August 2023 (ECF No. 6). In October 2023, Defendant filed a Motion to Dismiss. (ECF No. 21). Plaintiff responded, and Defendant replied. (ECF Nos. 29; 40). The Motion is now ripe for review.

## II. STANDARD OF REVIEW

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual

2

allegations." *Golden v. City of Columbus*, 404 F. 3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The Complaint should also be read as a whole, even if a specific alleged fact read in isolation appears meaningless. *Ricchio v. McLean*, 853 F.3d 553, 557 (1st Cir. 2017).

### III. LAW & ANALYSIS

### A. Statute of Limitations

As a preliminary matter, this Court addresses Defendants' argument that some or all of Plaintiff's claims are time-barred by the TVPRA's statute of limitations, which requires that a claim be "commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). Because Plaintiff alleges she was trafficked between 2008 and 2013, and she did not file this suit until May 26, 2023, Defendants argue that any allegations regarding trafficking that occurred before May 26, 2013 are time-barred. (ECF No. 21 at 16-17). Indeed, some district courts have reached the same conclusion. *See e.g., H.G. v. Inter-Cont'l Hotels Corp.*, 489 F. Supp. 3d 697, 710 (E.D. Mich. 2020) (concluding that because "the bulk of her claims relate to trafficking that took place from 2003-2008," "even if H.G. had plausibly alleged the essential elements of her TVPRA claims, the portions of those claims resting on her trafficking prior to December 9, 2009, would be time-barred."). Plaintiff responds, with admittedly scant analysis, that her claims survive

3

because she "filed her claim within 10 years of having been trafficked at IHG Defendants' hotel." (ECF No. 29 at 11).

Curiously, neither of the Parties address whether the "continuing violation" doctrine applies to Plaintiff's claims. Generally, in other contexts, "[a] claim accrues when a plaintiff has a complete and present cause of action [and] can file suit and obtain relief" or "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, No. 1:08-CV-346, 2015 WL 759849, at *5 (S.D. Ohio Feb. 23, 2015), aff'd, 839 F.3d 458 (6th Cir. 2016) (internal citations and quotation marks omitted) (explaining when a cause of action accrues for constitutional claims). But some wrongs are "continuing violations," such that the statute of limitations does not begin to run until the pattern of wrongful conduct has concluded. A continuing violation exists if: "(1) the defendants engage in continuing wrongful conduct; (2) injury to the plaintiffs accrues continuously; and (3) had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (quoting *Hensley v. City of Columbus*, 557 F.3d 693, 697 (6th Cir. 2009)).

Plaintiff's claims are precisely the sort to which the "continuing violation" doctrine should apply. As a district court in the Northern District of Illinois reasoned, Plaintiff's trafficking "injury arises from a 'numerous and continuous series of events' that extends into the statutory period," and therefore, "the 'continuing violation' doctrine permits a plaintiff 'to reach back to the beginning of a claim even if that beginning lies outside of the statutory period.'" *Ali v. Khan*, 336 F. Supp. 3d 901, 910 (N.D. Ill. 2018) (internal citations omitted) (applying the continuing violation

4

doctrine to a TVPRA claim). This Court, therefore, declines to dismiss Plaintiff's claims prior to March 26, 2013 as time-barred under the TVPRA's ten-year statute of limitations.

Defendants also argue, however, that all claims arising before the TVPRA was amended in December 2008—to include the "beneficiary theory" of liability on which Plaintiff relies—are barred. This timing argument is more persuasive. Generally, there is a "presumption against retroactivity for a provision creating new civil liabilities," and several circuits have soundly reasoned that such a strong presumption is not overcome by invocation of the continuing violation doctrine. *Ditullio v. Boehm*, 662 F.3d 1091, 1101 (9th Cir. 2011) (collecting cases and concluding that the TVPRA's predecessor, the TVPA, could not be applied retroactively to conduct before it was enacted). Accordingly, any portion of Plaintiff's beneficiary theory claims for conduct prior to December 23, 2008, are **DISMISSED WITH PREJUDICE**. The events occurring after December 23, 2008, however, are actionable.

### B. Direct Civil Liability Under the TVPRA § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases with many factual similarities to this one. *See e.g., T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-04933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *A.C. v. Red Roof, Inc.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019).

The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

As a preliminary matter, this Court has held in several cases that § 1595(a) can be a standalone claim, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d at 964; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for

6

their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). This Court likewise finds that Plaintiff's allegation that she is a victim of trafficking under § 1591 is enough to plead sufficiently that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss. (ECF No. 6 ¶ 146).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a). The Plaintiff must plead the following in order to survive a Motion to Dismiss under this theory: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

*1. Knowing benefit*

Plaintiff has sufficiently alleged that Defendants "knowingly benefited" financially from a venture in violation of the TVPRA. Plaintiff alleges that Defendants profited through renting rooms to Plaintiff's traffickers. (ECF No. 6 ¶ 13, 31(e)).

This Court found in *M.A.*, *H.H.*, and *T.P.* that "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *H.H.*, 2019 WL 6682152 at *2. *See also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowingly benefited element under

18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach"). The same conclusion applies here.

### 2. *Participation in a venture*

Plaintiff has also alleged sufficient facts to demonstrate that Defendants' conduct constituted "participation in venture" under § 1595(a). This Court has held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89); *see also G.G. v. Salesforce.com, Inc.*, 76 F.4th 544 (7th Cir. 2023) (holding that "the relevant 'venture'" under Section 1595 need not be 'specifically a sex trafficking venture'" and can be a "'commercial venture[]' like running or expanding a business."); *Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion); *H.H.*, 2019 WL 6682152, at *4 (same); *A.C.*, 2020 WL 3256261, at *6 (same). Further, participation in a venture under § 1595 does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F. Supp. 3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F. Supp. 3d at 968–69; *S.J.*, 473 F. Supp. 3d at 153–54; *Doe S.W.*, 2020 WL 1244192, *6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020).

Plaintiff alleges that Defendants own, supervise, manage, control, and/or operate the property at which she was trafficked. (ECF No. 6 ¶ 31). She alleges that Defendants exerted this control over the property through myriad means including providing reservation platforms, providing training to employees, providing customer review platforms, and implementing standardized rules of operation. (*Id.* at ¶¶ 121-135). Defendants counter that the hotels are subject to franchise agreements and are owned and operated by third parties removed from Defendants' control, such that Defendants have no direct liability for Plaintiff's injuries. (ECF No. 21 at 14-16). Defendants point out that there are no allegations that they directly interacted with or formed an agreement with Plaintiff's traffickers. (*Id.* at 15-16).

First, this Court addresses whether a franchisor-franchisee relationship between Defendants and the hotel operators is too attenuated to support Plaintiff's claim. Defendants point to the Eleventh Circuit's decision, *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714 (11th Cir. 2021), which this Court has analyzed several times before. *See e.g., T.P.*, 2022 WL 17363234, at *10-11. In *Doe #1*, the complaint included allegations that: (1) defendants licensed their brand to franchisees who paid royalties to the defendants and other fees based on a percentage of their room revenue; (2) defendants received a percentage of the revenue generated from the rooms in which trafficking occurred; (3) defendants "owned, managed, supervised, operated, oversaw, controlled the operation of, and/or were inextricably connected to the renting of rooms" at these hotels; (4) defendant franchisors investigated incidents of trafficking at the individual hotels and controlled training related to spotting trafficking; and (5) read online reviews mentioning prostitution and crime occurring generally at the hotels where plaintiffs were trafficked. *Doe #1*, 21 F.4th at 726. On these facts—admittedly similar to the ones *sub judice*—the Eleventh Circuit concluded that

9

plaintiffs failed to allege that "the franchisors participated in a common undertaking involving risk or profit that violated the TVPRA." *Id.* at 726–27.

But "[k]ey to the court's reasoning" in *Doe #1* "was how the plaintiffs had chosen to define the alleged venture—specifically as a '*sex trafficking*' venture." *G.G.*, 76 F.4th at 561-62 (emphasis added). Here, Plaintiff alleges that Defendants were engaged in business ventures at the property where Plaintiff was trafficked, not that Defendants participated in sex trafficking itself. (ECF No. 6 ¶ 31). This critical distinction limits *Doe #1*'s relevance here. *See G.G.*, 76 F.4th at 562. The alleged venture "need not be 'specifically a sex trafficking venture.'" *Id.* at 554. Instead, it can "be a business whose primary focus is not on sex trafficking." *Id.* In *G.G.*, for example, plaintiffs alleged that the defendant, Salesforce, provided advice and software to Backpage, a now-defunct website that hosted advertisements posted by the minor plaintiff's street-level trafficker. *Id.* at 548. The Seventh Circuit concluded that where Backpage had engaged in multiple violations of § 1591, Salesforce had engaged in a venture in violation of § 1595 that "was Backpage's business itself, including the 'growth,' 'expansion,' and profitability of that business." *Id.* at 554.

This Court finds that Plaintiff's allegations that Defendants profited, failed to implement policies, and maintained expansive control over hotel operation standards are sufficient to state a claim that Defendants participated in a commercial business venture in violation of § 1595. Indeed, Plaintiff sufficiently alleges that both Defendants and the franchisee from which they seek to distinguish themselves benefitted by renting rooms to traffickers and were engaged in a venture that sought to sustain and expand the profitability of the franchise.

### *3. Knew or should have known the venture violated the TVPRA*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture from which it benefitted "has engaged in an act in violation of" the TVPRA. Defendants need not have actual knowledge of trafficking crimes for liability to attach, as the language of § 1595(a) demonstrates that constructive knowledge is sufficient. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

Defendants vigorously seek to distinguish their knowledge from their franchisee's knowledge. In their view, any allegations regarding hotel staff's knowledge are irrelevant. (ECF No. 21 at 8-9). Defendants also contend that a generalized awareness of sex trafficking in hotels is insufficient to hold them liable; they urge that they must have actual or constructive knowledge of Plaintiff's trafficking *specifically*. (*Id.* at 7-8). Plaintiff responds that this Court has resolved these issues in other plaintiffs' favor several times before. (ECF No. 29 at 7-9).

As a threshold matter, this Court declines to erect an impermeable barrier between the knowledge of hotel staff and IHG Defendants' knowledge at this early juncture. Without the benefit of discovery, this Court cannot definitively conclude that the knowledge link between franchisor and franchisee is so tenuous that any knowledge or constructive knowledge possessed by hotel staff is per se irrelevant to Defendants' liability. Indeed, this Court has previously held that notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *M.A.*, 425 F. Supp. 3d at 968. Seeing similar allegations in the case at hand, this Court reaches the same conclusion.

Turning first to hotel staff's awareness of Plaintiff's trafficking, this Court is guided in its analysis by two cases that establish the spectrum on which civil liability under the TVPRA can be found. In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the two, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557.

Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women who he then sexually assaulted and abused at that location. No. 1:17-cv-6404 (BMC), 2018 WL 2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus had done further investigation following the incidents, it would not have uncovered any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at *13–14.

Plaintiff's allegations fall closer to *Ricchio* than to *Lawson*. Plaintiff alleges that her stays at Defendants' property produced repeated "red flags," including payment in cash, extended stays paid for on a day-to-day basis, large numbers of male visitors, and audible signs of distress during

12

conflict between Plaintiff and her traffickers. (*Id.* ¶ 66). More importantly, Plaintiff alleges that her trafficker routinely paid off staff to ignore signs of her trafficking and that staff witnessed violence against her in the hotel parking lot. (*Id.* ¶ 64). This Court has previously concluded that many aspects of Plaintiff's experience should have alerted staff to her trafficking, including excessive condoms, cash payments from her traffickers, and frequent male guests. *See M.A.*, 425 F. Supp. 3d at 967; *see also T.P.*, 2022 WL 17363234, at *8-9.

Even if the knowledge of on-the-ground hotel staff cannot be imputed to Defendants, Plaintiff's allegations are sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she also alleges that the franchisor itself had constructive knowledge of the problem. In comparable environments, courts have found failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it").

Defendants argue that Plaintiff fails to allege any facts that indicate they were on notice of sex trafficking issues at their properties during the relevant period. Defendants point out, for example, that the online reviews that Plaintiff quotes were all written after Plaintiff had escaped her traffickers. (ECF No. 21 at 9). Nor did Defendants join the various anti-trafficking agreements that Plaintiff points to until after her trafficking at the Crowne Plaza ended.[1] (*Id.* at 13-14).

---

[1] It is worth noting, however, that entities like ECPAT-USA and the United Nations Blue Heart Campaign have publicized the pandemic that is hotel-based trafficking since the late 1990s and

More specifically, though, the Complaint alleges that two prostitutes were arrested in a different Columbus Crowne Plaza location in 2012.  Although these arrests took place towards the end of the time that Plaintiff was trafficked in the Crowne Plaza, and it is not clear whether the arrestees were trafficked or engaged in consensual sex work, this Court has considered similar allegations previously and concluded that the plaintiff stated a claim.  For example, in *T.P. v. Wyndham Hotels & Resorts, Inc.*, this Court considered online reviews of the subject hotel that were submitted a year prior to the end of Plaintiff's trafficking and complained of "pimps" and a "prostitution ring."  No. 2:21-CV-04933, 2022 WL 17363234, at *1 (S.D. Ohio Dec. 1, 2022). Similarly, the Columbus city attorney declared the hotel in question a "public nuisance" because it was becoming a "haven for prostitution" two years prior to the end of the T.P.'s trafficking. *Id.* There, this Court concluded that T.P.'s "allegations [we]re sufficient to pass muster under the plausibility standard of a 12(b)(6) motion to dismiss because she allege[d] that the franchisors themselves had constructive knowledge of the problem."  *Id.* at *9.  This Court reaches the same conclusion here. And in light of the other ways in which Defendants could have been on notice of issues in their properties discussed above—for example, through hotel staff—this Court declines to dismiss the portion of Plaintiff's claims that pre-date the prostitution arrests.

Defendants also contend that they must have had knowledge or constructive knowledge with respect to Plaintiff *specifically*. (ECF No. 21 at 7-8).  But the express terms of the statute impose liability for benefiting from a venture that the Defendant knew or should have known was

---

early 2000s.  Membership or signatory status is not dispositive when it comes to constructive knowledge.

engaged in violations of § 1591, not violations of § 1591 *with respect to a particular person*. § 1595. Defendants' argument is unpersuasive.

In sum, the facts specific to Plaintiff's own sex trafficking, in combination with her allegations that Defendants were on notice about the prevalence of sex trafficking at its hotels yet continued to rent rooms to traffickers and failed to take adequate steps to train staff in order to prevent its occurrence, together support a conclusion that Defendants had constructive knowledge of the trafficking occurring at their hotels because it "should have known" about the nature of the venture under the beneficiary theory's negligence standard. Therefore, this Court finds that Plaintiff's allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving this Motion to Dismiss.

\* \* \*

Because Plaintiff's allegations meet the three-pronged requirement of § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA. *See M.A.* 425 F. Supp. 3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections).

### C. Vicarious Liability

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps. *Norfolk Redevelopment and Hous. Auth. v. Chesapeake*

*and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36 (1983) (explaining that the traditional rules of statutory construction advise that statutes are presumed not to disturb the common law "unless the language of the statute [is] clear and explicit for this purpose."); *see also In re Nicole Gas Prod., Ltd.*, 581 B.R. 843, 850 (B.A.P. 6th Cir. 2018), *aff'd sub nom., Nicole Gas Prod., Ltd.*, 916 F.3d 566 (6th Cir. 2019) (explaining that statutes are presumed to embrace the common law extant at their enactment). In the past, this Court, and other district courts, have applied the state common law of vicarious liability when addressing indirect liability arguments under the TVPRA. *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *see also A.B.*, 455 F. Supp. 3d at 194–95 (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law). Since this Court's ruling in 2019, another district court chose to apply the federal common law of vicarious liability in a TVPRA case. *A.B.*, 484 F. Supp. 3d at 939–40 (citing Ninth Circuit cases where the court applied the federal common law of agency when the federal statute did not otherwise provide direction).

As this Court has previously outlined, the Sixth Circuit has yet to rule on whether the federal or state common law of vicarious liability should be applied under the TVPRA. While this Court has previously entertained arguments for both given the nearly identical analysis required under federal and Ohio common law, this Court will proceed under a federal common law analysis of the issue. This approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments. *See e.g., Marr v. Rife*, 503 F.2d 735, 740–41 (6th Cir. 1974) (explaining that in determining the extent of liability of the owner of a real estate agency for violations of Fair Housing Act by his agent, court should apply federal law and should not be

restricted by respondeat superior law or law of vicarious liability of the various states); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 371–72 (6th Cir. 2015) (citing *In the Matter of Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (May 9, 2013)) (explaining that the FCC concluded that defendants may be held vicariously liable for statutory violations under federal common law agency principles, including apparent authority and ratification) *but cf. Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 611 (6th Cir. 2018) (deciding to apply state common law to an ERISA contract dispute regarding successor liability because a federal court may take direction from "the law of the state in which it sits" so long as the standard used "best comports with the interests served by ERISA's regulatory scheme," but explaining that "as a general matter, the court must look to the federal common law and should draw guidance from state common law only when federal common law does not provide an established standard").

### 1. Agency

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Restatement (Third) of Agency* § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id.* at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who

17

contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting *Restatement (Second) of Agency* § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker*, 804 F.Supp.2d at 623 ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself *preclude* the existence of a principal-agent relationship between them."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)). To succeed under an agency theory, Plaintiff must show both: (1) that Defendant and its franchisees were in an agency relationship; and (2) that hotels or hotel staff are plausibly liable under § 1595(a).

Plaintiff alleges that Defendants exercised day-to-day control over the franchise property at issue here. (ECF No. 6 ¶¶ 121-35). Plaintiff argues that this includes requiring franchisees to, among other things: (1) use IHG's software and platforms; (2) use IHG-approved vendors for internet and security services; (3) gather reservation, payment, and occupancy data to be shared with IHG corporate; (4) use standardized training for employees; (5) comply with IHG's regulated room rental rates; and (6) adhere to other brand standards and corporate policies. (*Id.*). These allegations are sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate Defendants' control over the franchisee properties for purposes of an agency relationship and vicarious liability.

And Plaintiff alleges that the hotel franchisees themselves committed a wrong to be imputed on Defendants. *See J.L. v. Best W. Int'l Inc.*, 521 F. Supp. 3d 1048, 1064-65 (D. Colo. 2021). This Court applies the three-pronged test established by 18 U.S.C. § 1595—and already used to assess Defendant's direct liability—to the hotel franchisees as well: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a).

First, Plaintiff alleges that the franchisees rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 6 ¶ 31). Second, Plaintiff has alleged sufficient facts—that franchisee hotels, along with Defendants, benefited financially from renting rooms to traffickers and should have known trafficking was going on based on the totality of the circumstances—to meet § 1595's definition of "participation in a venture" in a commercial setting that profited from Plaintiff's sex trafficking. (*Id.*). Third, Plaintiff alleged sufficient facts to demonstrate that employees at the hotel had constructive knowledge that she was being trafficked; specifically, that staff would have seen many red flags pointing toward trafficking and signs of Plaintiff's physical deterioration and abuse. (*Id.* at ¶ 66). Therefore, the beneficiary theory is satisfied with respect to Defendants' franchisee.

### 2. *Joint Employer Status*

With respect to a joint employer theory of liability, Defendant argues that, notwithstanding this Court's prior decisions to the contrary, joint employer doctrine cannot apply in TVPRA cases. (ECF No. 21 at 18-21). That Defendants have not found the joint employer doctrine applied outside of employment law context elsewhere (*see id.* at 18) is not a compelling reason to reject

its application here or change course from the dozens of TVPRA cases in which this Court has concluded that it is a viable theory.

Much like agency theory, whether two employers are a joint employer often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). "While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment policies." *B.D.G.*, 2023 WL 5935646, at *10.

Plaintiff alleges that "IHG employees work throughout the Crowne Plaza by IHG." (ECF No. 6 ¶ 31(b)). Defendants argue, however, that Plaintiff fails to allege sufficient employment-related control over the franchise location. Whether Plaintiff's joint employer theory succeeds is a close call. Ultimately, though, because Plaintiff alleges that Defendants post all hotel jobs on their websites, control employee training, and provide employee benefits, she has sufficiently

20

pleaded a joint employer theory against IHG. *A.R.*, 2022 WL 17741054, at *11 (finding joint employer theory of vicarious liability sufficiently pleaded where Plaintiff pled that Wyndham promulgated "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED IN PART**, to the extent that it challenges the viability of the portion of Plaintiff's claim that arises before December 23, 2008, but is otherwise **DENIED.**

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: June 28, 2024**

21