**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **S.R.,** ***an individual*****,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:23-cv-1731** |
| | : | |
| **v.** | : | **Judge Algenon L. Marbley** |
| | : | |
| **WYNDHAM HOTELS & RESORTS, INC.,** ***et al.*****,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| | : | |
| **Defendants.** | : | |

**OPINION AND ORDER**

This matter comes before the Court on Defendant Wyndham Hotels & Resorts, Inc.'s Motion for Summary Judgment. (ECF No. 123). Plaintiff S.R.'s claims against all Defendants in this action are time-barred under the Trafficking Victims Protection Reauthorization Act, so Wyndham's motion is **GRANTED** and this case is **DISMISSED**.

## I. INTRODUCTION

The Trafficking Victims Protection Reauthorization Act ("TVPRA") sets forth certain criminal penalties for those who benefit from human trafficking. *See* 18 U.S.C. § 1591(a). The TVPRA also provides a private right of action for victims of human trafficking to sue their trafficker and anyone who knowingly benefitted, or attempted to benefit, from participation in a venture with the trafficker. *See id.* The requirements for liability under this beneficiary theory are: (1) the person or entity knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value; (2) from participating in a venture; (3) that the person or entity knew or should have known engaged in an act that violated 18 U.S.C. §§ 1581–97. 18 U.S.C. § 1595(a); *see, e.g.*, *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019) (Marbley, J.); *G.G. v. Salesforce, Inc.*, 76 F.4th 544, 553 (7th Cir. 2023).

In providing a civil remedy under the TVPRA, Congress created a ten-year statute of limitations:

> No action may be maintained under subsection (a) unless it is commenced not later than the later of—
>
> (1) 10 years after the cause of action arose; or
>
> (2) 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

18 U.S.C. § 1595(c).

## II. BACKGROUND

### A. Factual Background

S.R. grew up in Franklin County, Ohio and endured traumatic childhood marked by violence. Her father was shot and killed when she was seven, and her mother remarried a series of alcoholic and violent men who abused S.R., S.R.'s mother, and S.R.'s younger sister. By the time she was eleven years old, S.R. was a habitual runaway. Because her mother failed to keep her at home, S.R. entered foster care, where she was further abused. She was groomed and ultimately first trafficked when she was twelve years old—older men would house her, feed, her, and ply her with drugs and alcohol so they could watch her dance. She had a son when she was fifteen, and when she was sixteen, she began stripping in a club in Columbus. She had a daughter at age twenty, and once she turned twenty-one, she began go-go dancing at a different club. During this time, S.R. was trafficked intermittently, and her housing was unstable. She was frequently homeless, sleeping in parks and under bridges. (S.R. Dep. Tr., ECF No. 123-3 at 11–13, 22–29).

S.R.'s trafficking continued off and on from the time she was twelve through much of her adulthood. The final period of her trafficking began in 2008, when she was thirty-eight years old, and ended when she was arrested on May 22, 2013, when she was forty-three years old. This period of trafficking started because S.R. was "fronted" drugs by gangs, incurred a debt, and had

to repay that debt. The gangs included several organized criminal groups—the "Detroit Boys," the "North Side Posse," the "West Side White Boys," and the "East Side New York Boys"—that trafficked her during this period of time at a variety of hotels in Columbus, including a Knights Inn on West Broad Street, a Crowne Plaza on East Nationwide Boulevard, and a Motel 6 on Scarborough Boulevard. She also engaged in voluntary prostitution during this time. (*Id.* at 27, 30–31, 33, 53–54, 71–75, 78–79, 152–55).

S.R.'s trafficking was not continuous during this time period. She received $15,000 in Social Security backpay in 2011, and while that money lasted, she was not trafficked and did not engage in voluntary commercial sex. (*Id.* at 50, 214–17, 219).

Additionally, during this time, S.R. was arrested and charged with solicitation. She received court-appointed counsel, but, out of fear and shame, never informed her court-appointed lawyer, any judge, any doctor or medical personnel, or any police or other emergency responder that she was being forced into commercial sex against her will. She explained that some of the people she "had transactions with" were police officers or firefighters. She also explained that she never feared for her safety or received a threat after May 22, 2013. (*Id.* at 94–97, 168).

***1. May 22 and 23, 2013***

May 22 and 23 are significant dates in S.R.'s life: she celebrates May 23 every year. On May 22, 2013, she solicited an undercover Columbus police officer on her own initiative. S.R.'s memory of the event is vivid: "The air was blowing, I felt like it was Wizard of Oz. It was nice kind of springy, I just felt like it was one of those warm days. . . . [T]he sun was out." She entered the undercover police officer's car and offered him a sexual experience in exchange for money. The police officer "shined his badge" and S.R. "just lost it" and attempted to fight the officer and

jump out of the car. She was arrested, "ended up hog-tied in the backseat," and was taken to jail, where she remained overnight. She woke up in jail on May 23. (*Id.* at 37, 82–87).

S.R. marks and celebrates May 23rd as an important day in her life. She has an application on her phone that tracks the time she has been clean and sober, beginning from this date. And May 22, 2013 retains significance, too. After that date, because of her arrest, S.R. never engaged in prostitution or was forced to have commercial sex against her will. As she put it, being arrested "basically saved [her] life," and she was able to enter diversionary programming following her May 22, 2013 arrest. (*Id.* at 90–91, 97–98, 128–30, 205, 211–12).

S.R.'s memory is uncertain about many of the other dates and times when she was trafficked. This is understandable. She was trafficked over a long period of time and at many places, and was often drugged and subjected to violence or the threat of violence. (*See id.* at 132–33). For instance, she could not recall the exact times when she was at Wyndham's Knights Inn, but testified that it was not in 2012 or 2013. (*Id.* at 177, 192–93). She also could not say whether she was at the Crowne Plaza in 2012 or 2013. (*Id.* at 118–21). But her testimony about May 22 and 23, 2013 was clear and consistent.

### B. Procedural Background

S.R. initiated this lawsuit on May 23, 2023, seeking relief for her trafficking at the Knights Inn, Crowne Plaza, and Motel 6 hotels. (Compl., ECF No. 1 ¶¶ 39–53). Her suit named five defendants: Defendant Wyndham Hotels & Resorts, Inc. was sued for its relationship with the Knights Inn; Defendants Six Continents Hotels, Inc., Crowne Plaza, LLC, and Holiday Hospitality Franchising, LLC were sued for their relationships with the Crowne Plaza hotel; and Defendant G6 Hospitality, LLC was sued for its relationship with the Motel 6 hotel. (Am. Compl., ECF No.

6 ¶¶ 22, 26–29, 31–32, 35). She asserts one count against all Defendants, seeking relief under the TVPRA. (*Id.* ¶¶ 145–49).

In September 2024, the Court dismissed Defendant Crowne Plaza, LLC from this case at S.R.'s request. (*See* ECF Nos. 86; 87). The remaining Defendants deposed S.R. on October 24, 2025. (*See* S.R. Dep. Tr., ECF No. 123-3 at 1). At her deposition, S.R. testified unequivocally that May 22, 2013 was the last day she had been trafficked.

### *1. The Pending Motion for Summary Judgment*

On December 12, 2025, Defendant Wyndham Hotels & Resorts, Inc. moved for summary judgment, arguing that based on S.R.'s own testimony, her TVPRA claim was time-barred under the applicable statute of limitations. (ECF No. 123 at 6). S.R. opposed. She asserted that there remained a genuine issue of material fact as to when her trafficking ended; and she argued in the alternative that the Court should apply the discovery rule or equitable tolling to salvage her time-barred claims. (ECF No. 132 at 3–4, 12). Wyndham replied, (ECF No. 137), and this motion is fully briefed and ripe for review.

### *2. Subsequent Motions*

At the same time Wyndham moved for summary judgment, it also sought a stay of the discovery deadlines pending the Court's resolution of the statute of limitations issue. (ECF No. 124 at 5–6). S.R. opposed a stay, arguing that factual issues precluded summary judgment on the statute of limitations. (ECF No. 131 at 1–2). Wyndham replied. (ECF No. 139). Finding Wyndham's reasoning persuasive, on March 4, 2026, Magistrate Judge Deavers stayed S.R. and Wyndham's discovery deadlines and ordered them to submit proposed deadlines for any remaining discovery after the Court ruled on the summary judgment motion. (ECF No. 144 at 1).

On March 20, 2026, Defendant G6 Hospitality, LLC moved for summary judgment, also arguing that S.R.'s claim is time-barred, but further contending the claim would also fail on the merits. (ECF No. 146 at 1). S.R. sought a stay of that motion under Rule 56(d), arguing that G6 had produced 72,560 additional pages of documents the day prior to filing its motion. (ECF No. 149 at 1). On April 16, 2026, Magistrate Judge Jolson stayed briefing on both these motions in the interests of judicial economy, noting their resolution would likely be impacted by the ruling on Wyndham's fully-briefed motion for summary judgment. (ECF No. 152 at 1). The next day, Defendants Holiday Hospitality Franchising, LLC and Six Continents Hotels, Inc. moved for summary judgment, again arguing that S.R.'s claim was barred by the statute of limitations and would fail on the merits. (ECF No. 153 at 1–2). Magistrate Judge Jolson then stayed briefing on that motion, too. (ECF No. 156).

The Court turns to Wyndham's fully-briefed motion for summary judgment, recognizing that its resolution may also resolve these motions.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At the summary judgment stage, the court's function is not "to weigh evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Courts ask whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Summary judgment is inappropriate "if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248. In such a case, there is an issue

for trial because "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," but evidence that is "merely colorable" or "not significantly probative" is not enough to defeat summary judgment. *Id.* at 249–50.

The party seeking summary judgment carries the initial burden of presenting law and argument in support of its motion, as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotext Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Hines v. Humana Ins. Co.*, 689 F. Supp. 3d 516, 525 (S.D. Ohio 2023) (Marbley, J.) (citing Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250).

Factual evidence is viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" are drawn in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). That said, a mere "scintilla" of evidence supporting the nonmoving party's position is insufficient—"there must be evidence on which the jury could reasonably find for the [nonmovant]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## IV. LAW AND ANALYSIS

### A. Statute of Limitations

Summary judgment on statute of limitations grounds is appropriate if the limitations period has run and if there is no genuine issue of material fact as to when the plaintiff's cause of action accrued. *FIP Realty Co. v. Ingersoll-Rand PLC*, 522 F. Supp. 3d 335, 349 (S.D. Ohio 2021) (Marbley, J.) (citing *Campbell v. W. R. Co.*, 238 F.3d 772, 775 (6th Cir. 2001)). The statute of

limitations is an affirmative defense, so the defendant carries the burden of showing that the statute of limitations has run. *Id.*

### *1. Parties' Arguments*

Wyndham's position is straightforward. The TVPRA provides for civil beneficiary claims made by the victims of sex trafficking against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known was engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a). Where the victim was not a minor at the time of the alleged offense, as is the case here since S.R.'s claims arise from her trafficking that occurred beginning in 2008, such claims must be "commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). So long as S.R. was being trafficked, she would have a cause of action arising that she could assert within a decade. *Cf. A.H. v. Red Roof Inns, Inc.*, 2026 WL 2085221, at *3 (S.D. Ohio July 20, 2026) (Marbley, J.) (a plaintiff's right to assert a claim for a violation of CAVRA accrues until the trafficking ends).

Wyndham points out that S.R.'s TVPRA claim must be time-barred universally as a threshold matter because, based on S.R.'s own testimony, she was not trafficked at any hotel after May 22, 2013, but she did not bring this suit until May 23, 2023—ten years and one day from the date that she testified was the last date she was ever trafficked. (ECF No. 123 at 6). If S.R.'s TVPRA claim is time-barred universally due to this timeline, then all the Defendants—and not just Wyndham—are entitled to summary judgment. *E.g.*, *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 639 (E.D. Mich. 2024) ("[A]ll claims outside of the relevant 10-year time period are time-barred based on the statute of limitations.").

Wyndham also contends that any apparent significance that single day might have is beside the point as far as Wyndham is concerned, as S.R. testified that the last time she was trafficked at Wyndham's Knights Inn was no later than 2011—well beyond the TVPRA's ten-year statute of limitations for her claims. (ECF No. 123 at 6).

Arguing that her suit is not clearly barred by the TVPRA's statute of limitations, S.R. counters that the record evidence is conflicting, there is a genuine issue of material fact as when her cause of action accrued, and therefore summary judgment is not warranted. (ECF No. 132 at 3, 12). *First*, she argues that S.R.'s deposition testimony was contradictory, variously indicating that her sex trafficking ended on May 22 or May 23, 2013. *Second*, she argues that corroborating evidence exists that supports her position that her trafficking ended on May 23, 2013, making her claim timely, and that Wyndham knew of this material before moving for summary judgment. *Third*, she argues there is conflicting evidence arising from her verified interrogatory responses, complaint, and deposition testimony suggesting that she may have been trafficked at Wyndham's Knights Inn into 2013. (*Id.* at 3, 12–16).

In reply, Wyndham points out that S.R.'s testimony regarding the end of her trafficking was unequivocal, and there is no reason to disregard her testimony. (ECF No. 137 at 1). Moreover, Wyndham rejects S.R.'s documents offered in response to the motion for summary judgment, noting that they are unauthenticated and inadmissible hearsay, and at any rate fail to contradict S.R.'s sworn testimony. (*Id.* at 2).

### *2. Analysis*

Each of S.R.'s arguments regarding the statute of limitations fails.

*a. S.R.'s deposition testimony clearly shows that her trafficking was outside the TVPRA's statute of limitations when she filed suit.*

S.R.'s testimony established that her trafficking ended on May 22, 2013. True, her testimony during her deposition was uncertain as to many facts and other dates about her trafficking. But she was strikingly consistent that her trafficking ended on May 22, 2013. Now, she attempts to muddy waters that are crystal-clear: S.R. was arrested by an undercover police officer after she solicited him for commercial sex on May 22, and she woke up in jail on May 23, 2013. (*E.g.*, ECF No. 123-3 at 82–85). That is why S.R. celebrates May 23rd every year—it marks the first day of a new chapter in her life, just as May 22nd marks the last day she was trafficked. Although S.R. cites to six pages of her testimony to suggest that her answers were "conflicting," (ECF No. 132 at 3 (citing ECF No. 123-3 at 37, 52, 82, 83, 118, 121)), nothing in those pages supports her contention that the last day she was trafficked was May 23, 2013—*after* she was arrested for soliciting an undercover officer on May 22nd. S.R.'s argument that she "mistakenly stated" that she was arrested on May 22nd is not credible because there was no inconsistency in her testimony. (*Id.* at 13). S.R. repeatedly confirmed during her deposition that she was arrested on May 22nd, which is consistent with how she treated that timeline well before she was deposed. (ECF Nos. 126; 126-1).

Thus, even assuming that she had been trafficked at the Defendants' hotels on May 22, 2013, the TVPRA's statute of limitations had expired when she filed suit on May 23, 2023.

*b. S.R.'s proffered supplemental evidence is inadmissible and would otherwise fail to create a genuine issue of material fact.*

Next, S.R. attempts to introduce "corroborating evidence" that she claims shows her trafficking ended on May 23, 2013 via declarations submitted by a paralegal and an attorney. (ECF

No. 132 at 13). This proffered supplemental evidence is inadmissible, and would otherwise fail to create a genuine issue of material fact.

*i. Lexis Report*

In one declaration, a paralegal at S.R.'s law firm states that she created a "SmartLinx Person Report" on S.R. through the LexisNexis legal database on December 11, 2025, which listed an arrest date for S.R. for May 23, 2013—not May 22, 2013. (ECF No. 132-1 ¶¶ 2–11). An accompanying attorney's declaration further explained that S.R.'s counsel found the LexisNexis report after learning Wyndham intended to move for summary judgment on a statute of limitations defense. (ECF No. 132-2 ¶¶ 3–13). But S.R. has not provided that SmartLinx Person Report, and thus the Court is unable to review it.[1]

And even if S.R. had provided the document, it is doubtful that it would be admissible. Statements that "the declarant does not make while testifying at the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement" are hearsay, Fed. R. Evid. 801(c), and thus are generally inadmissible. Fed. R. Evid. 802. Certain types of records fall within exceptions to the rule against hearsay, *see* Fed. R. Evid. 803, but S.R.'s proffered documents appear to be reports that summarize other underlying reports. *See Lakah v. UBS AG*, 996 F. Supp. 2d 250, 258–59 (S.D.N.Y. 2014) (rejecting as inadmissible hearsay an expert report summarizing underlying government reports and bank records). Indeed, an older November 7, 2023 SmartLinx Person Report provided by S.R. begins with the disclaimer that the report is "FOR INFORMATIONAL PURPOSES ONLY." (ECF No. 141-1). These kinds of LexisNexis SmartLinx reports are "inadmissible hearsay." *Rembert v. Swagelok Co.*, 604 F. Supp.

[1] Although the declarations submitted by S.R. in support of her opposition brief suggest this document was submitted as Exhibit E to Wyndham's motion, (*see* ECF Nos. 132-1 ¶ 12; 132-2 ¶ 8), Wyndham's Exhibit E is a different document.

3d 670, 685–86 (N.D. Ohio 2022) (rejecting Lexis SmartLinx report at summary judgment), *aff'd in part rev'd in part on other grounds*, 2023 WL 3094546, at *8 (6th Cir. Apr. 26, 2023). The Court has no reason to believe the December 11, 2025 report—which, at any rate, was never submitted—differs in this respect.

*ii. Sheriff's Booking History*

The attorney's declaration also states that S.R. had her criminal records expunged, but was later able to obtain her expunged records "from her attorney who helped her expunge her records" so that S.R. was able to "provide[] to [her present counsel] a document showing that her arrest was on May 23, 2013." (ECF No. 132-2 ¶¶ 3–13). That document is a heavily-redacted version of a Franklin County Sheriff's Office Booking History Report, showing that S.R. was booked on May 23, 2013 for soliciting. (ECF No. 141-2). The fundamental problem for S.R. is that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Here, S.R.'s attorney "lacks personal knowledge" of this document's authenticity, and therefore "cannot properly authenticate" it. *Frisch v. Nationwide Mut. Ins. Co.*, 2013 WL 210732, at *5 (S.D. Ohio Jan. 18, 2013) (Frost, J.). Indeed, it is hard to see how this unauthenticated document, introduced by an attorney declaration that is functionally self-serving, could create an issue of fact to preclude summary judgment. *See Johnson v. Washington Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013) (Marbley, J.) (self-serving affidavits, taken alone, do not create issues of fact that would preclude summary judgment); *accord Copeland*, 57 F.3d at 479. Because authenticity is a precondition to admissibility, *Hartley v. St. Paul Fire & Marine Ins. Co.*, 118 F. App'x 914, 921 (6th Cir. 2004), the Court cannot accept this document.

And even if the Court accepted the sheriff's booking history, it is unclear how it would create a genuine issue of material fact or contradict S.R.'s testimony that she was arrested on May 22, 2013. S.R. has not explained why the Court should equate the arrest date she testified about with the Sheriff's booking date in its purported report.[2]

*c. S.R.'s interrogatory responses and complaint allegations cannot supplant her deposition testimony.*

Finally, S.R. attempts to sow confusion based on her complaint allegations and her interrogatory responses, (*see* ECF No. 132 at 14–15), which generally assert that she was trafficked during a time period beginning in 2008 and ending in 2013. But S.R.'s testimony is dispositive, and does not conflict with other evidence in the record.

To be sure, in August 2023 she alleged in her Amended Complaint that "[f]rom approximately 2008 to 2013, while under the coercive control of traffickers, S.R.'s [*sic*] was imprisoned in hotel rooms rented by her traffickers and forced her [*sic*] to have sex for money" at three specific Knights Inn, Crowne Plaza, and Motel 6 hotels. (*E.g.*, ECF No. 6 ¶ 53). And she responded to Wyndham's interrogatories on January 8 and October 3, 2025 to state that she was trafficked at these hotels in question until some indeterminate time in "2013." (ECF Nos. 123-1; 123-2 at 2). But she did not provide more specificity than the general year. And both her interrogatory responses were caveated, with S.R. reserving the right to revisit her answers. For instance, her October 3, 2025 response contained the caveat that she reserved the right to "timely supplement, revise, correct, or clarify her written answers and objections . . . if additional

[2] "Booking is the process where information about a criminal suspect is entered into the system of a police station or jail *after* that person's arrest." Legal Information Institute, *Booking*, Cornell Law School, available at https://www.law.cornell.edu/wex/booking (last visited Aug. 10, 2026) (emphasis added).

information becomes available through recollection or investigation." (ECF No. 123-2 at 1). Her deposition occurred a few weeks later, on October 24, 2025. (ECF No. 123-3 at 1). By all accounts, S.R.'s testimony clarified and supplemented her written responses.

S.R. fails to provide any legal authority for her proposition that her earlier, vaguer allegations and interrogatory responses can somehow inject factual uncertainty where her testimony is clear and unequivocal. Although S.R. could not testify to all the specifics of her trafficking, which spanned decades of her life when she was addicted to drugs and physically and psychologically traumatized, she had no doubts about the day her trafficking ended. Thus, there are no "gaps or inconsistencies in Plaintiff's testimony" on this critical statute of limitations issue. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 2025 WL 26965500, at *12 (S.D. Ohio Sept. 22, 2025) (Marbley, J.) (triable issue of material fact remained where plaintiff's deposition testimony on key issue was not "conclusive," and plaintiff testified to her "recall problems" on that key issue).

The Court sees no reason to treat the less specific trafficking period referenced in S.R.'s complaint and interrogatory responses as inconsistent or conflicting with the precise dates she provided in her deposition. Summary judgment merely requires "there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 248 (emphasis in original). There is a marked difference between "testimony" and "brief interrogatory response[s] most likely prepared by [an] attorney" where "the interrogatory response contains little detail of the events in question." *Singleton v. Bd. of Educ. USD 500*, 894 F. Supp. 386, 389 (D. Kan. 1995) (declining to strike plaintiff's affidavit that conflicted with plaintiff's earlier interrogatory responses and granting summary judgment to defendant); *see also In re Nat'l Century Fin. Enters., Inc.*, 846 F. Supp. 2d 828, 879 (S.D. Ohio 2012) (Graham, J.) (distinguishing between testimony that "directly contradicts" and testimony that "supplement[s] . . . or fills a gap left open by prior evidence") (citations and internal quotation

marks omitted). S.R.'s complaint allegations do not create a genuine issue of material fact, either. A plaintiff cannot "create a triable issue of fact simply by pointing to discrepancies between [her] complaint and [her] deposition testimony. When a claimant's testimony contradicts the allegations in [her] complaint, [courts] will credit [her] later testimony." *Leary v. Livingston Cnty.*, 528 F.3d 438, 444 (6th Cir. 2008) (parentheticals omitted); *accord Oliver v. Gray*, 2021 WL 1247797, at *6 (S.D. Ohio Apr. 5, 2021) (Marbley, J.) (explaining that a litigant "cannot rely solely on allegations in his complaint and [briefing] to create a factual issue"). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Singleton*, 894 F. Supp. at 390 (citing *Anderson*, 477 U.S. at 247–48).

**B. Exceptions to the Statute of Limitations**

S.R. argues in the alternative that she can still maintain her suit, either under the continuing violation doctrine, the discovery rule, or equitable tolling. (ECF No. 132 at 12, 15–20). Wyndham counters that none of these alternatives saves S.R.'s suit. (ECF No. 137 at 3–7, 11–14; *see* ECF No. 123 at 9–10). The Court considers each in turn, as there are certain situations where a plaintiff may be able to assert claims that would otherwise appear to be outside of the statute of limitations' timeframe. In this instance, however, all are inapplicable.

***1. Continuing Violation Doctrine***

Generally, claims accrue and arise when the plaintiff knows or has reason to know about her injury and could seek relief. *See Corner Post, Inc. v. Bd of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 804 (2024) ("A claim accrues when the plaintiff has the right to assert the claim in court."); *Am. Premier Underwriters, Inc. v. Nat'l R.R. Passenger Corp.*, 839 F.3d 458, 461 (6th Cir. 2016). Under the TVPRA's specific statute of limitations, once a claim arises, a ten-year clock begins for a plaintiff to assert it. 18 U.S.C. § 1595(c)(1).

Some wrongs, however, are "continuing violations" such that the statute of limitations does not begin to run until the pattern of wrongful conduct has concluded. A continuing violation exists where: (1) "the defendants engage in continuing wrongful conduct"; (2) injury to the plaintiffs accrues continuously"; and (3) "had the defendants at any time ceased their wrongful conduct, further injury would have been avoided." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (citation omitted).

S.R. raises the continuing violation doctrine to challenge Wyndham's assertion that her trafficking at Wyndham's Knights Inn ended in 2011—well-beyond the ten-year statute of limitations. She argues that the continuing violation doctrine applies because she was not free of her traffickers until 2013. (ECF No. 132 at 15–16).

The continuing violation doctrine was previously applied in this case at the motion-to-dismiss stage. At that time, the Court declined to dismiss S.R.'s claims predating 2013 even though she had filed suit in 2023, reasoning that S.R. could "reach back to the beginning of a claim even if that beginning lies outside of the statutory period." *S.R. v. Wyndham Hotels & Resorts, Inc.*, 2024 WL 3226126, at *2 (S.D. Ohio June 28, 2024) (Marbley, J.) (quoting *Ali v. Khan*, 336 F. Supp. 3d 901, 910 (N.D. Ill. 2018)). Importantly, however, the continuing violation doctrine does not salvage claims that are entirely outside the statute of limitations period. Instead, it permits a plaintiff to assert a claim for continuing wrongful conduct. Even if the beginning of the wrongful conduct was outside of the applicable statute of limitations, a claim for that conduct can be brought so long as some part of the wrongful conduct falls within the statute of limitations. Because any wrongful conduct committed by the Defendants against S.R. ended no later than May 22, 2013, that conduct would fall outside of the applicable statute of limitations period and the continuing violation doctrine would not apply. The Court need not reach the parties' dispute as to whether

the continuing violation doctrine could apply if S.R.'s trafficking at Wyndham's Knights Inn ended in 2011, (*compare* ECF No. 132 at 14–16 *with* ECF No. 137 at 3–7), because even if it did, any wrongful conduct on Wyndham's part (or the part of any Defendant) undisputedly ended no later than May 22, 2013.

Thus, the continuing violation doctrine does not save S.R.'s claims from the statute of limitations because no TVPRA violation occurred within the limitations period.

### *2. Discovery Rule*

S.R. also invites the Court to apply the discovery rule in this case. (ECF No. 132 at 16). Relying on the Ninth Circuit's decision in *Gregg v. Dep't of Pub. Safety*, she argues that she was "unable to recognize she was injured at all" because she was "brainwashed." (ECF No. 132 at 18 (quoting 870 F.3d 883, 889 (9th Cir. 2017)). S.R. contends that "her statute of limitations started once she had an adequate opportunity to rebuild her life—a date that cannot be decided on the face of the complaint." (*Id.*).

Wyndham counters that the discovery rule does not apply to the TVPRA, which has an express limitations period. (ECF No. 137 at 11–12).

Federal courts apply the discovery rule to determine when a statute of limitations period for a claim starts when a statute "is silent on the matter." *Patterson v. Chrysler Grp., LLC*, 845 F.3d 756, 763 (6th Cir. 2017); *Rotella v. Wood*, 528 U.S. 549, 555 (2000). The discovery rule provides that "the limitations period begins to run when the plaintiff discovers, or with due diligence should have discovered, the injury that is the basis of the action." *Patterson*, 845 F.3d at 764 (citation omitted). But as the Supreme Court has emphasized, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." *Rotella*, 528 U.S. at 555. "[T]he justification for a discovery rule does not extend beyond the injury: . . . 'The prospect is

not so bleak for a plaintiff in possession of the critical facts that he has been hurt and who has inflicted the injury. He is no longer at the mercy of [ignorance of his injury]. There are others who can tell him if he has been [legally] wronged, and he need only ask.'" *Id.* at 555–56 (quoting *United States v. Kubrick*, 444 U.S. 111, 122 (1979)).

The TVPRA speaks with precision regarding its statute of limitations: a plaintiff may bring a civil action under the statute "not later than . . . 10 years after the cause of action arose" or "10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense." 18 U.S.C. § 1595(c). Thus, it is doubtful that the discovery rule applies to the TVPRA. *See C.C. v. Rashid*, 2025 WL 1785273, at *5 (D. Nev. June 26, 2025) ("The TVPRA's accrual language does not wait until the plaintiff has 'discovered' his cause of action, but rather commences when the cause of action arose. . . . [T]he TVPRA's text does not appear to incorporate the discovery rule."); *J.M. v. Red Roof Franchising, LLC*, 2025 WL 2410941, at *7 (E.D. Cal. Aug. 20, 2025) (observing that "no court appears to have interpreted the TVPRA as authorizing courts to use a general discovery rule"). As the Supreme Court recently warned, federal courts should not "read in" language that would create a "discovery provision" into laws that do not already contain such a provision. *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

> The length of a limitations period reflects a valid judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones. It is Congress, not this Court, that balances those interests. We simply enforce the value judgments made by Congress.

*Id.* at 14–15 (citation and internal quotation marks omitted). At a minimum, courts "cannot infer that Congress intended courts to employ a discovery rule from the mere absence of any reference to a discovery rule within the TVPRA." *J.M.*, 2025 WL 2410941, at *6.

Today, the Court ultimately need not decide whether the discovery rule is foreclosed as a matter of law in TVPRA cases. S.R. cannot invoke the discovery rule in this case because she was

on notice of her alleged injuries and the Defendants' alleged role in inflicting them. Indeed, she testified that while she was trafficked from 2008 to 2013, she never informed her counsel, judges, medical personnel, or emergency responders that she was being forced into commercial sex against her will out of fear and shame—*not* because she "had no way of seeing herself as a victim," (ECF No. 132 at 18), as she argues now. Additionally, her testimony is clear that she *never* feared for her safety or received a threat after May 22, 2013. (ECF No. 123-3 at 94–97, 168).

The discovery rule is inapplicable in this case, because S.R. knew of her injuries when she was trafficked.

### *3. Equitable Tolling*

Finally, S.R. invites the Court to apply equitable tolling in this case. (ECF No. 132 at 19–20). In doing so, she relies on *J.M.*, where the Eastern District of California determined it was "unclear whether the limitations period may properly be tolled" based on the face of plaintiff J.M.'s complaint, and declined defendant Red Roof Franchising, LLC's request for judgment on the pleadings on the basis that further discovery was necessary to determine whether equitable tolling was appropriate. *J.M.*, 2025 WL 2410941, at *7–8.

Wyndham counters that S.R. has failed to establish a basis for equitable tolling in either her opposition papers or her pleading. (ECF No. 137 at 12–14).

A litigant "is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (citation and internal quotation marks omitted). The Sixth Circuit has instructed that equitable tolling "must necessarily be determined on a case-by-case basis," and identified "five factors to consider when determining the

appropriateness" of equitable tolling: (1) "lack of notice of the filing requirement"; (2) "lack of constructive knowledge of the filing requirement"; (3) "diligence in pursuing one's rights"; (4) "absence of prejudice to the defendant"; and (5) "the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement." *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (evaluating Title VII claims).

S.R. does not actually develop any argument as to how she pursued her rights diligently and some extraordinary circumstance prevented her from bringing her suit within the statute of limitations. Instead, she simply suggests that "the factual record can be further developed." (ECF No. 132 at 20). This is insufficient. S.R. had the opportunity to develop and advance some argument regarding equitable tolling in her pleadings, but she did not. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *In re Scotts Miracle-Gro Co. Sec. Litig.*, --- F. Supp. 3d ----, 2026 WL 1094854, at *27 n.15 (S.D. Ohio Apr. 22, 2026) (Marbley, J.) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)). It is hard to believe that S.R.'s deposition testimony would not have touched on circumstances showing why equitable tolling would be appropriate even if she failed to raise the matter sooner in her pleadings. After considering S.R.'s deposition testimony, the Court is reluctant to accept S.R.'s invitation to consider equitable tolling now. She has raised this matter for the first time following her deposition and after a summary judgment motion raising a statute of limitations defense. *Cf. K.W. v. Red Roof Inns, Inc.*, --- F. Supp. 3d ----, 2026 WL 1600737, at *3–4, *6, *10 (S.D. Ohio June 4, 2026) (Marbley, J.) (declining invitation to consider arguments raised by plaintiff following unfavorable deposition when plaintiff had the opportunity to develop those arguments earlier in the case). S.R. does not point to any part of the record or her pleadings that would show why equitable tolling might be appropriate in this case.

Although S.R.'s deposition testimony details the extreme abuse she suffered, there is no indication that she was prevented or unable to understand her injuries and their causes—either at the time her injuries were inflicted or in the time after she was arrested on May 22, 2013. Her case is both factually and procedurally different from J.M.'s, because J.M. had alleged that she "suffered from extreme abuse that had lasting psychological consequences" and was "prevented her from understanding her injuries and their causes." *J.M.*, 2025 WL 2410941, at *8. Thus, it was "reasonable" in J.M.'s case "to infer from these allegations that J.M. might be able to prove she acted diligently by pursuing this case," particularly given the "early stage" of the litigation, where discovery had not yet occurred. *Id.*

Here, S.R.'s own testimony established that she was on notice of her injuries and their causes, both while she was trafficked and immediately afterwards. (ECF No. 123-3 at 94–97, 168, 197). She has failed to show that equitable tolling would be appropriate in her case, and "[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (6th Cir. 2000).

The Court will not apply equitable tolling to S.R.'s claims because she has not shown why equitable tolling would be appropriate in this case, and the evidence fails to reflect any extraordinary circumstance that prevented her from filing her suit on time.

## V. CONCLUSION

For the foregoing reasons, Plaintiff S.R.'s claims against all Defendants in this action are time-barred. Defendant Wyndham's motion for summary judgment on statute of limitations grounds is **GRANTED**. Because the same statute of limitations time period applies to all the other

remaining hotel Defendants, S.R. cannot maintain her cause of action against them, either. This case is **DISMISSED**, and the Clerk of Court is **DIRECTED** to close it.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: August 10, 2026**